**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SINOTECHNIX LLC, | |
| *Plaintiff*, | |
| v. | Civil Action No. 2:24-cv-544-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG DISPLAY CO., LTD. | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

**DEFENDANTS' MOTION TO TRANSFER VENUE**
**TO THE DISTRICT OF NEW JERSEY**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND BACKGROUND ...............................................................................1

      A.    Defendants, their relevant employees, and the evidence about the Accused
            Products are overwhelmingly located in New Jersey and South Korea. .................1

            1.    SEA's most relevant witnesses and documents—concerning over
                  98% of the 1,234 Accused Products—are at its headquarters in
                  New Jersey. ................................................................................................2

            2.    SEC's and SDC's most relevant witnesses and documents are in
                  South Korea. ...............................................................................................3

      B.    Plaintiff is domiciled in neighboring Delaware, asserts patents that
            originated in South Korea, and professes *no connection* to EDTX. ......................3

      C.    SEC's relevant suppliers are predominantly in Asia, critical prior art
            sources are in New Jersey, and no relevant third parties are in EDTX. .................4

II.   LEGAL STANDARDS ........................................................................................................6

III.  ARGUMENT .......................................................................................................................7

      A.    This case could have been brought in the District of New Jersey—home to
            the United States headquarters of Samsung's consumer business. ........................7

      B.    The private-interest factors favor transfer because nearly all domestic
            party witnesses and evidence are in New Jersey. ...................................................8

            1.    The witness-convenience factor strongly favors transfer to
                  New Jersey, where SEA's most relevant witnesses live and work. ............8

            2.    The sources-of-proof factor strongly favors transfer to New Jersey,
                  where the most relevant SEA employees maintain their documents. ........11

            3.    The compulsory-process factor strongly favors transfer to DNJ,
                  whose subpoena power extends to critical sources of prior art. ...............12

            4.    Transfer of this early-stage case causes no practical problems. ...............13

      C.    The public-interest factors strongly favor transfer because the District of
            New Jersey has the strongest local interest in this case. .......................................14

            1.    Local interests strongly favors New Jersey—the community that is
                  home to SEA's headquarters and its most relevant decision-
                  makers. ......................................................................................................14

            2.    The other public-interest factors are neutral. ...........................................15

IV.    CONCLUSION.................................................................................................15

## TABLE OF AUTHORITIES

### CASES

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) .........................................................................13

*ATEN Int'l Co. v. Emine Tech. Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009).............................................................................13

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  No. 4:13-CV-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) ...............................13

*Cellspin Soft, Inc. v. Nike, Inc.*,
  No. 2:22-CV-455-JRG-RSP, 2023 WL 6280260 (E.D. Tex. Sept. 26, 2023)........11

*DSS Tech. Mgmt. v. Apple, Inc.*,
  No. 6:13-CV-919-JDL, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014)...............6, 10

*Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*,
  No. 2:17-CV-558-JRG, 2018 WL 11474182 (E.D. Tex. May 30, 2018) ...............13

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*,
  592 U.S. 351 (2021)............................................................................................8, 14

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................................8, 9, 11, 12, 15

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .................................11

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) .........................................................6, 8, 10, 12

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)..........................................................................7, 12

*Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*,
  No. 2:21-CV-313-JRG, 2022 WL 965394 (E.D. Tex. Mar. 30, 2022)...................13

*PersonalWeb Techs., LLC v. NEC Corp. Am.*,
  No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) .........................15

*In re Princeton Digit. Image Corp.*,
  496 F. App'x 73 (Fed. Cir. 2013) .............................................................................8

*Promote Innovation LLC v. Schering Corp.*,
　No. 2:10-CV-248-TJW, 2011 WL 665817 (E.D. Tex. Feb. 14, 2011)...................9, 13, 14, 15

*In re Samsung Elecs. Co.*,
　2 F.4th 1371 (Fed. Cir. 2021) .............................................................................6, 15

*In re TikTok, Inc.*,
　85 F.4th 352 (5th Cir. 2023) ........................................................................................9

*In re Volkswagen AG*,
　371 F.3d 201 (5th Cir. 2004) ...............................................................6, 7, 8, 10, 14

*In re Volkswagen of Am., Inc.*,
　545 F.3d 304 (5th Cir. 2008) .........................................................7, 8, 9, 11, 14

*W. Coast Trends, Inc. v. Ogio Int'l, Inc.*,
　No. 6:10-CV-688, 2011 WL 5117850 (E.D. Tex. Oct. 27, 2011) .........................................14

## STATUTES

28 U.S.C. § 1391(c) ..............................................................................................8

28 U.S.C. § 1400(b) ..............................................................................................7

28 U.S.C. § 1404(a) ........................................................................................1, 6, 7

35 U.S.C. § 311(b) ..............................................................................................12

## RULES

Fed. R. Civ. P. 4(k)(1)(A) .......................................................................................7

D.N.J. Local Civ. R. 40.1(a) .....................................................................................7

D.N.J. Local Civ. R. 9.3 ........................................................................................15

D.N.J. Patent Rules 1.1–4.6 ....................................................................................15

Local P.R. 1.1–4.6 ..............................................................................................15

Local P.R. 3-1 ...............................................................................................3, 10

## REGULATIONS

37 CFR § 1.34 ...................................................................................................4

## TABLE OF ABBREVIATIONS

Defendants rely on certain documents, declarations, and exhibits cited according to the following abbreviations:

| Abbr. | Citations |
|---|---|
| **D.I. #** | Citation to the case docket (2:24-cv-554) by Docket Index number |
| **Walker ¶ #** | Declaration of Alexander Walker (counsel of record) attaching Exhibits 1-42 |
| **Ex. #** | **Exhibits 1-42** attached to and described in the Walker Declaration |
| **Table #** | **Tables 1 and 2** included in the Walker Declaration (Walker ¶¶ 10-11) |
| **Schinasi ¶ #** | Declaration of Daniel Schinasi (Samsung Electronics America, Inc.) **[sealed]** |
| **Delserro ¶ #** | Declaration of Dean Delserro (Samsung Electronics America, Inc.) **[sealed]** |
| **Lee ¶ #** | Declaration of Youngmin Lee (Samsung Electronics Co., Ltd.) **[sealed]** |
| **Chang ¶ #** | Declaration of Hayeon Chang (Samsung Display Co., Ltd.) **[sealed]** |

*\* \* \* All emphasis in the following document is added unless otherwise indicated  \* \* \**

## I.    INTRODUCTION AND BACKGROUND

Defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Display Co., Ltd. ("SDC") (collectively, "Defendants") respectfully request transfer to the District of New Jersey, Newark Vicinage ("DNJ"). *See* 28 U.S.C. § 1404(a).

Defendants are electronics companies whose global operations are centered in the Republic of Korea ("South Korea"), but whose United States operations concerning over **98%** of the 1,234 accused products are based in New Jersey—not Texas or, particularly, its Eastern District ("EDTX"). Plaintiff Sinotechnix LLC is a company domiciled in the neighboring state of Delaware with **no** professed connections to EDTX. Five of the six asserted patents originated in South Korea and list 12 South Korea-based inventors, while the other patent originated in California and lists two California-based inventors. Defendants' relevant suppliers are nearly all in Asia—and one of those Asian suppliers assigned the asserted patents to Plaintiff. Thus, nearly all evidence and witnesses that are not in Asia will come from New Jersey—the United States home of Samsung's consumer brand and its most relevant domestic employees. Transfer is warranted because the District of New Jersey is clearly the more convenient forum.

### A.    Defendants, their relevant employees, and the evidence about the Accused Products are overwhelmingly located in New Jersey and South Korea.

Defendants make and/or market products or components under the Samsung brand. Lee ¶ 3; Schinasi ¶ 3; Chang ¶ 4. Plaintiff, through a 35-page "Appendix," purports to accuse **1,234** distinct products of infringement. Ex. 5. The vast majority of those products are Samsung-branded consumer TVs (850) and computer monitors (360), along with nineteen LCD display modules and, finally, five laptops (the "Accused Products").[1] *See* Table 2.

---

[1] Plaintiff charted only 14 products in its P.R. 3-1 contentions—*all TVs or monitors*—and no laptops or LCD display modules. *See* Ex. 4; Tables 1-2. Defendants wrote to Plaintiff raising various deficiencies, including with respect to the over 1,200 **uncharted** products. *See* Exs. 6-8.

1.    **SEA's most relevant witnesses and documents—concerning over 98% of the 1,234 Accused Products—are at its headquarters in New Jersey.**

The sole domestic defendant, SEA, is a New York corporation with its headquarters in Ridgefield Park, New Jersey.  D.I. 29 (Answer) ¶ 3.  SEA's business centers on marketing Samsung-branded consumer products in North America.  Schinasi ¶ 3.  Each product discussed in Plaintiff's complaint is labeled with the address of SEA's New Jersey headquarters:



*See, e.g.*, D.I. 41 ¶¶ 27 (highlighted above), 45, 62, 79, 95, 112.

As one would expect, SEA's most relevant witnesses and documents are at its New Jersey headquarters.  Although consumers can purchase SEA's products nationwide, SEA's work concerning ***nearly all*** Accused Products is directed by large marketing organizations for the Home Entertainment (for consumer TVs) and Display (for computer monitors) categories—both at SEA's New Jersey headquarters.  Schinasi ¶¶ 3-5; Delserro ¶¶ 2-4.  Accordingly, SEA's most knowledgeable witnesses and relevant documents regarding the marketing and sales of nearly all Accused Products are in New Jersey.  Schinasi ¶¶ 5, 7-9; Delserro ¶¶ 4-5.

SEA also has an office in Plano, Texas (in EDTX).  Schinasi ¶ 7.  The marketing teams at SEA Plano focus on Mobile Devices (*e.g.*, phones, tablets, and laptops), but—critically—***not*** Home Entertainment (TVs) or Display (monitors).  *Id.*  Among the 1,234 Accused Products, only ***five*** are laptops marketed by SEA Plano.  *Id.*; *see also* Table 2.  Thus, less than one-half of one percent of the 1,234 Accused Products in this case are laptops that are marketed by a small team

in Plano.  *See* Table 2.  In contrast to SEA Plano's miniscule relevance concerning five laptops (0.41% of the 1,234 Accused Products), over 98% of the Accused Products are consumer TVs and monitors [2]—including ***all*** 14 products with P.R. 3-1(c) charts—managed by SEA's Home Entertainment and Display teams in New Jersey.  *See* Table 2; Schinasi ¶ 5; Delserro ¶ 4.

### 2.    SEC's and SDC's most relevant witnesses and documents are in South Korea.

Defendant SEC is a South Korean company with its headquarters in Suwon, South Korea. D.I. 29 (Answer) ¶ 2.  SEC develops and makes consumer electronics, such as consumer TVs and monitors, that are sold globally under the Samsung brand.  Lee ¶ 3.  SEC does not have any offices or manufacturing facilities in the United States.  *Id.*  Rather, SEC designs and develops the Accused Products (and relevant components) in South Korea and manufactures those products outside the United States.  *Id.* ¶¶ 3-7  SEC's relevant engineering witnesses and technical documents are thus located in South Korea.  *Id.*  The teams responsible for SEC's other relevant operations (*e.g.*, licensing, procurement, global marketing, finance) are also based in South Korea.  *Id.* ¶¶ 6-7, 9.

Defendant SDC is a South Korean company that supplies components to many electronics companies, including SEC.  Chang ¶¶ 3-4.  SDC operates as an independent company and does not make or sell end-user products.  *Id.* ¶¶ 3-6; D.I. 33 at 1-2, 4-5.  SDC exited the LCD business over two years ago and does not have any manufacturing facilities or relevant employees in Texas. *Id.* ¶¶ 5-7.  If any SDC witnesses or proof are relevant, they would come from South Korea. *Id.* ¶¶ 7-8; D.I. 33 at 1-2, 4-5; D.I. 34.

### B.    Plaintiff is domiciled in neighboring Delaware, asserts patents that originated in South Korea, and professes *no connection* to EDTX.

---

[2] The remaining ~1.5% are LCD display modules that are components, not end-user products, whose marketing and sales in the United States (if any at all) would have been handled by non-party Samsung Semiconductor, Inc. (SSI) based in San Jose, CA.  *See* Ex. 41; Chang ¶¶ 4, 6.

"Plaintiff is a Delaware limited liability company with its principal place of business at 8 The Green, Suite A, Dover, Delaware 19901." D.I. 41 ¶ 1.  Plaintiff does not profess any connection to EDTX (or Texas generally) in its complaint and apparently is not even registered to do business in Texas.  D.I. 41; Ex. 28.  Plaintiff's recent disclosures (Ex. 31) identify a single purportedly affiliated witness—Robert Katz, based in Dallas, TX (in the Northern District of Texas ("NDTX")).  *See* Ex. 32.  Mr. Katz is a patent lawyer who signed Plaintiff's USPTO filings.  *See, e.g.*, Exs. 1, 2 (signed "/Robert Katz/"); *see also* 37 CFR § 1.34 ("When a patent practitioner . . . signs a paper . . . [his] signature shall constitute a representation . . . [that he] is authorized to represent the particular party.").  Mr. Katz has sued Samsung at least twice (as counsel of record), both times on similar technologies and products to those at-issue here.  *See* Exs. 33-37.

Plaintiff asserts six patents,[3] all of which it allegedly acquired in 2022 from South Korean company Seoul Semiconductor Co., Ltd. or its subsidiaries (collectively, "Seoul Semi").  Exs. 1-2; Ex. 42 ¶¶ 1-4.  The six patents, all asserted against Samsung products with backlit displays, generally relate to light-emitting diodes (LEDs) or lenses for LEDs.  Five of those patents originated with Seoul Semi, and they collectively list 12 South Korea-based inventors.  '873 Patent (Cover), '113 Patent (Cover); '626 Patent (Cover); '952 Patent (Cover); '913 Patent (Cover).  The sixth patent, also obtained from Seoul Semi, originated with a California company called InteLED Corp. and lists two California-based inventors (one of whom appears to be deceased).  '162 Patent (Cover); Ex. 30.  Thus, with a single exception in California, evidence from the inventors and prior assignees of the asserted patents is in South Korea.

### C.    SEC's relevant suppliers are predominantly in Asia, critical prior art sources are in New Jersey, and no relevant third parties are in EDTX.

---

[3] U.S. Patent Nos. 7,618,162 ('162 Patent); 7,748,873 ('873 Patent); 7,901,113 ('113 Patent); 7,951,626 ('626 Patent); 8,132,952 ('952 Patent); and 9,412,913 ('913 Patent); *see* D.I. 41.

The Accused Products contain certain LED components provided by SEC's suppliers. Lee ¶¶ 6, 8. Nearly all of those suppliers are in Asia. *Id.* ¶ 8; Chang ¶¶ 7-8. None is in EDTX. And one of those suppliers—Seoul Semi—is the prior assignee of the asserted patents and, accordingly, likely has evidence concerning Defendants' license, exhaustion, standing, marking, and noninfringement defenses. Lee ¶ 8(ii); Exs. 1-2; D.I. 29 (Answer).

New Jersey is also home to critical sources of prior art—Sarnoff Corporation (now SRI, in Princeton, NJ, Ex. 10) and EMCORE Corporation (in Budd Lake, NJ, Ex. 9)—in the respective fields of lenses and LEDs. In particular, before the asserted patents were filed, Sarnoff developed prior art that discloses the subject matter of Plaintiff's lens patents (the '162, '873, and '113 Patents).[4] In 1999, Sarnoff and EMCORE jointly developed improved LEDs and together filed U.S. Patent No. 6,404,125 (Ex. 14), which discloses the key subject matter of Plaintiff's '952 Patent (concerning LEDs with red and green phosphors, filed in 2005) and '626 Patent (concerning LEDs with sloped sides, filed in 2006).[5] In 2001, a team at EMCORE led by Dr. Ivan Eliashevich (Director of R&D at the time) filed U.S. Patent Publ. No. 2004/0113168 (Ex. 12) on improved "Light Extraction Efficiency of GaN Based LEDs," which also discloses the subject matter of

---

[4] *Compare* Sarnoff's US6,406,150 (Ex. 15) at 1:55-2:8 (disclosing lens with "a *light collimator*" to maintain "*brightness uniformity*") *with* Plaintiff's '162 Patent at 1:66-2:7 (disclosing lens that "produces a very *tightly collimated beam* with *uniform irradiance*"); Sarnoff's US 6,511,186 (Ex. 16) at 3:32-43 (disclosing lens that "*maintains uniform focus across the screen*") *and* WO 2001/002882 (Ex. 18) at 3:21-32 (similar) *with* Plaintiff's '162 Patent at 1:66-2:7 (disclosing lens that "*uniformly illuminates a square target*"); and Sarnoff's US 6,476,783 (Ex. 17) at 2:8-13 (disclosing lenses that "may be *reflective, refractive or a combination*") *with* Plaintiff's '873 Patent at 2:19-13 (disclosing "*a lens comprising* . . . a *total reflection surface* . . . *and* . . . *refractive surface(s)*") *and* '113 Patent at 2:24-28 (same).

[5] *Compare* Sarnoff's and EMCORE's joint patent US 6,404,125 (Ex. 14) at 2:50-3:20 (disclosing LED with "a *plurality of* . . . *phosphors*" including "*Red Coating*" and "*Green Coating*") *and* 9:30-44 (same LED also has "*a sidewall 740* that forms an *incline angle* . . . *non-normal to the surface*") *with* Plaintiff's '952 Patent at 3:5:9 (disclosing "*white light emitting diodes*" with "*red and green phosphors*") *and* '626 Patent at 4:41-45 (disclosing LED with a "*side surface*" that "is *not perpendicular to but inclined* . . . *from a horizontal plane*").

Plaintiff's '626 patent.[6]  And finally, by 2005, Dr. Eliashevich and others had filed U.S. Patent No.

7,125,734 directed to LED chip mounting and encapsulants, the subjects of Plaintiff's '913 patent

(filed in 2007).[7]  EMCORE at the time also collaborated with GE under a joint venture called

GELcore to develop and sell LED products.  *See, e.g.*, Exs. 19-22.  At least six EMCORE inventors

(including Dr. Eliashevich) and five Sarnoff inventors are in NJ or within 100 miles of the DNJ

courthouse.  Exs. 23-24 (December 2024 public record searches).

## II.    LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought[.]"

28 U.S.C. § 1404(a).  Transfer is appropriate where the moving party shows that the suit could

have been brought in the transferee venue, and that the latter is "clearly more convenient" than the

venue where the suit was filed.  *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1376 (Fed. Cir. 2021).

The relevant comparison is "between the two forums"—here, EDTX and DNJ.  *In re Juniper

Networks, Inc.*, 14 F.4th 1313, 1318, 1322 (Fed. Cir. 2021).  And Courts must look at "the situation

which existed when suit was instituted."  *Id.*  *See also DSS Tech. Mgmt. v. Apple, Inc.*, 2014 WL

6847569, at *3-4 (E.D. Tex. Nov. 7, 2014) (internal citation and quotation omitted).

The moving party must first show that the suit could have been brought in the transferee

venue.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If the movant

satisfies that threshold, courts in the Fifth Circuit consider eight private- and public-interest

---

[6] *Compare* EMCORE's US 2004/0113168 (Ex. 12) ¶ [0050] ("The *edges* of the . . . the semiconductor *. . . need not be perpendicular to the plane* of the substrate; *they may be . . . inclined*") *with* Plaintiff's '626 Patent at 4:41-45 (disclosing "a *side surface* of a semiconductor" that "*is not perpendicular to but inclined at a . . . slope* from a horizontal plane").

[7] *Compare* EMCORE's US 7,125,734 (Ex. 13) at 3:62-67 (disclosing LED with structures "to provide *mechanical support*," "*improve securing* of the device die to the *mount*" and "provide . . . *encapsulation*") *with* Plaintiff's '913 Patent at 2:38-45 (disclosing LED with structures "to *increase a bonding force* between the . . . *lead frames* and the *encapsulation*").

factors—the *Volkswagen* factors—to determine whether transfer is appropriate. *Volkswagen I*, 371 F.3d at 203; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The plaintiff's choice of forum is not a separate factor—it is subsumed within the movant's burden of proof. *See In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

## III.    ARGUMENT

This is a dispute between a Delaware plaintiff and a group of defendants whose global operations are centered in South Korea, but whose most relevant domestic operations are in New Jersey. The overwhelming majority of relevant witnesses and proof—to the extent they do not come from South Korea or elsewhere in Asia—will come from New Jersey. The District of New Jersey also has subpoena power over critical sources of prior art. And the Newark Vicinage of DNJ has the strongest local interest. Accordingly, the District of New Jersey is clearly the most convenient forum for this dispute. *See* 28 U.S.C. § 1404(a).[8]

### A.    This case could have been brought in the District of New Jersey—home to the United States headquarters of Samsung's consumer business.

Plaintiff could have filed this case in the District of New Jersey. SEA is subject to personal jurisdiction and venue in NJ because it has a regular and established place of business—indeed, its principal place of business—in Ridgefield Park, NJ, and the relevant products are marketed and sold in NJ. Schinasi ¶¶ 3-4; Fed. R. Civ. P. 4(k)(1)(A); 28 U.S.C. § 1400(b). SEC and SDC are also subject to personal jurisdiction in NJ because their relevant contacts with the United States arise from or relate to business transactions in which SEC transfers products (some of which include components supplied by SDC) to NJ-based SEA. Lee ¶¶ 3, 8(i); Chang ¶¶ 4, 7-8; *see Ford*

---

[8] Vicinage allocation is determined based on "the residence of the defendant, the convenience of litigants, counsel and witnesses, and the place where the cause of action arose." *See* D.N.J. Local Civ. R. 40.1(a) (Ex. 29 at 53). Accordingly, Defendants expect that upon transfer this case will be assigned to the Newark Vicinage that includes SEA's U.S. headquarters.

*Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).  Venue in NJ is proper over SEC and SDC because they are foreign-domiciled entities subject to suit in any District.  28 U.S.C. § 1391(c); *see also In re Princeton Digit. Image Corp.*, 496 F. App'x 73, 75 (Fed. Cir. 2013) (upholding transfer from EDTX to New York).

**B.     The private-interest factors favor transfer because nearly all domestic party witnesses and evidence are in New Jersey.**

The private-interest factors are: (1) the convenience for willing witnesses; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *See Volkswagen I*, 371 F.3d at 203; *Volkswagen II*, 545 F.3d at 315. Those factors strongly favor transfer here because the bulk of relevant domestic evidence and witnesses are in or closer to New Jersey, and there are no practical problems with transfer. Conversely, this case has next to zero connections to the Eastern District of Texas.

**1.     The witness-convenience factor strongly favors transfer to New Jersey, where SEA's most relevant witnesses live and work.**

The witness-convenience factor, which is "probably the single most important factor in [the] transfer analysis," strongly favors transfer.  *See Juniper*, 14 F.4th at 1318 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).

**a.     NJ is clearly the most convenient forum for Samsung witnesses.**

It would be eminently more convenient for Defendants' most relevant witnesses to prepare for and attend trial near SEA's New Jersey headquarters—a short drive from both the Newark Federal Courthouse and Newark Liberty International Airport.  *See* Exs. 25, 26; Lee ¶ 10; Schinasi ¶¶ 2, 9; Delserro ¶ 2.  SEA's witnesses who are responsible for the marketing and sales of consumer TV and monitor technologies in the United States are in NJ.  Schinasi ¶¶ 5-6; Delserro ¶ 4.  Since consumer TVs and monitors comprise over **98%** of the 1,234 Accused Products in this case, it

cannot be credibly contested that the lion's share of Defendants' domestic witnesses will come from NJ. *See, e.g.*, *Promote Innovation LLC v. Schering Corp.*, 2011 WL 665817, at *4 (E.D. Tex. Feb. 14, 2011) (granting transfer to DNJ where "at least six" willing defense witnesses were in NJ compared to the plaintiff's one witness, a patent attorney, in Houston).

The SEC and SDC witnesses who are most knowledgeable regarding the technical and engineering tasks related to the Accused Products live and work in South Korea. Lee ¶¶ 2-4, 6-7, 9-10; Chang ¶¶ 7-8. Those witnesses will incur significant inconvenience and time away from home regardless of whether trial is held in EDTX or DNJ. *See, e.g.*, *Genentech*, 566 F.3d at 1344 (noting that, for European witnesses traveling west, California and Texas were similarly inconvenient). But although travel from South Korea to Newark and from South Korea to Dallas both impose substantial inconveniences, the Marshall Courthouse is over 170 miles from Dallas-Fort Worth International Airport, adding an additional over-two-hour drive (each way) for witnesses who travel from Asia. *Compare* Ex. 25 *with* Ex. 26; *see Genentech*, 566 F.3d at 1344 (Fifth Circuit's "100-mile rule" applies, but not "rigidly," with respect to overseas witnesses).[9] Marshall is similarly distant from SEA's Plano office. Ex. 26. Thus, on balance, it would be more convenient and result in less lost productivity for SEC's and SDC's South Korean witnesses to attend trial in Newark, NJ rather than Marshall, TX because they could more easily work from SEA's NJ headquarters, which is near both the courthouse and the airport (17 miles). Ex. 25; Lee ¶ 10; *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) (observing that factor considers the "time 'witnesses must be away from their regular employment'") (quoting *Volkswagen II*).

---

[9] SEC's relevant third-party suppliers are generally located in Asia. Lee ¶ 8. SEC's third-party suppliers have not explicitly agreed to testify willingly at trial, but to the extent any Asia-based suppliers come willingly, trial in Newark would be more convenient than trial in Marshall for the same reasons.

**b.    EDTX has little to no connection to this case.**

In contrast to the significant benefits of trial in New Jersey for Samsung witnesses, EDTX offers little to no relative convenience.  Plaintiff is a Delaware entity asserting patents originating in South Korea or California—with *no* professed connection to EDTX.  Since being formed and allegedly acquiring the six asserted patents in 2022, Plaintiff does not appear to have conducted any business in EDTX or anywhere else (besides filing this suit).  *See* Exs. 27-28.  And although Plaintiff's recent disclosures identify a patent lawyer, Robert Katz, as Plaintiff's sole affiliated witness (Exs. 31-32), his presence in Dallas, TX cannot shift the balance because:  (1) Dallas is in NDTX, not EDTX (*see Juniper*, 14 F.4th at 1321 (comparison is "between the two forums")); and (2) the "location of counsel" is irrelevant to the transfer analysis (*see Volkswagen I*, 371 F.3d at 206 (counsel in Dallas could not be considered, despite their relative proximity to EDTX)).

Plaintiff will surely point to SEA's Plano office in an attempt to anchor this case in EDTX.  But SEA's Plano employees focus on marketing Mobile Devices that—aside from *five* laptops—are *not accused* in either Plaintiff's complaint or its P.R. 3-1 contentions.  *See* Schinasi ¶ 7.  Critically, SEA's Plano employees are *not* generally knowledgeable about marketing or sales of Home Entertainment products (consumer TVs) and Display products (monitors), which account for *over 98%* of the 1,234 Accused Products in this case.[10]  Table 2; Schinasi ¶¶ 4, 7.  The relevant witnesses for this case are predominantly in Asia and NJ.  Accordingly, significant inconveniences can be avoided by transferring this case to DNJ—home to both SEA's headquarters and its witnesses who are most knowledgeable regarding over 98% of the 1,234 Accused Products.

---

[10] Moreover, the Court should disregard the five laptops because they were not accused in Plaintiff's complaint.  *See* Table 2; D.I. 41; *see also DSS Tech.*, 2014 WL 6847569, at *3 (venue analysis considers the facts "at the time the lawsuit was filed").  Nor were they charted in Plaintiff's P.R. 3-1 contentions.  *See* Exs. 4-5; Table 2.

      **2.**    **The sources-of-proof factor strongly favors transfer to New Jersey, where the most relevant SEA employees maintain their documents.**

The sources-of-proof factor strongly favors transfer because, much like SEA's employees, the bulk of SEA's relevant documents are in New Jersey. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. Even in view of the availability of electronic discovery, the location of documents is still an important factor in the transfer analysis. *Volkswagen II*, 545 F.3d at 316. Courts should also consider "the location of document custodians and . . . where documents are created and maintained." *In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *see also Cellspin Soft, Inc. v. Nike, Inc.*, 2023 WL 6280260, at *2 (E.D. Tex. Sept. 26, 2023).

*First*, SEA's relevant documents for nationwide marketing and sales of the Accused Products are created and maintained by SEA employees at SEA's NJ headquarters. Schinasi ¶ 5; Delserro ¶ 5. The location of the "document custodians" and "the creation and maintenance of records" favors "the holding venue"—here, New Jersey. *See Cellspin*, 2023 WL 6280260, at *2. SEA also maintains physical samples of various Accused Products in NJ. Schinasi ¶ 10; Delserro ¶ 6. To be sure, SEA's Plano office may have documents regarding marketing of a small number of the 1,234 Accused Products (the five laptops). Table 2; Schinasi ¶ 7. But the bulk of SEA's proof relates to consumer TVs and monitors marketed from NJ. *Cf. Genentech*, 566 F.3d at 1345, 1348 (ordering transfer where transferee venue housed documents for 8 of the 9 accused products).

*Second*, the NJ area is home to critical sources of prior art. As explained in Section I(C), Sarnoff, EMCORE, and at least eleven prior art inventors (including Dr. Eliashevich, EMCORE's Director of R&D at the relevant time) are in NJ or within its subpoena power, and they have crucial information concerning prior art to the asserted patents. Exs. 23-24. *See supra* § I(C). And their

work on products or prototypes (*see, e.g.*, Exs. 19-22) will be critical at trial because product prior art cannot be raised in an IPR.  *See* Walker ¶ 28; 35 U.S.C. § 311(b).

*Third*, the bulk of the relevant technical, engineering, licensing, and finance documentation will come from South Korea, where SEC's employees maintain and access those documents. Lee ¶¶ 5-7, 9.  That evidence, as well as third-party proof from SEC's Asian suppliers,[11] would have to be transported a long way regardless of whether trial is held in EDTX or DNJ.  *Cf. Genentech*, 566 F.3d at 1346 (Factor favored transfer where "the documents housed in Europe . . . will need to be transported in any event, [and] it is only slightly more inconvenient or costly to require the transportation . . . to California [the transferee venue] than Texas.").

*Finally*, since Plaintiff's complaint does not suggest any connection between Plaintiff and EDTX (D.I. 41), Defendants have no reason to believe that any of Plaintiff's sources of proof are in EDTX.[12]  In sum, this factor strongly favors transfer.  *See, e.g., Nintendo*, 589 F.3d at 1199-1200 ("Because most evidence resides in [the transferee district] or [Asia] with none in Texas, . . . this factor [weighs] heavily in favor of transfer.").

### 3.    The compulsory-process factor strongly favors transfer to DNJ, whose subpoena power extends to critical sources of prior art.

The compulsory-process factor strongly favors transfer to New Jersey.  As explained above, critical sources of prior art—from EMCORE, Sarnoff, and at least eleven of their former or current employees—are in New Jersey or within DNJ's subpoena power.  Exs. 9-24.  DNJ has the power to compel live trial testimony from each of those companies and former/current

---

[11] SDC is one of SEC's Asian suppliers.  Lee ¶ 8(ii); Chang ¶¶ 4, 7.  SDC previously moved to dismiss the complaint against it in its entirety.  D.I. 33.  But to the extent SDC's documents are relevant, they will come from South Korea.  Chang ¶¶ 7-8.

[12] To the extent Plaintiff points to documents held by its patent lawyer, Mr. Katz, in Dallas (Exs. 31-32), those purported sources of proof cannot defeat transfer because Dallas is in NDTX—not EDTX.  *See Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either . . . forum does not weigh against transfer.")

employees—EDTX does not.[13]  *See, e.g.*, *Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*, 2018 WL 11474182, at *5 (E.D. Tex. May 30, 2018) (compulsory process favored transfer to DNJ).

The other potentially relevant third parties are not within the subpoena power of either District.  The component suppliers for the Accused Products are predominantly located in Asia, as are nearly all of the inventors of the asserted patents.  One living inventor appears to reside in California, which is not within either District's subpoena power.  *Endo Pharms.*, 2018 WL 11474182, at *5.  No supplier or inventor is located in the Eastern District of Texas.

Accordingly, because the District of New Jersey has subpoena power over more relevant third parties than EDTX, this factor strongly favors transfer to New Jersey.  *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (Compulsory process "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue.").

### 4.    Transfer of this early-stage case causes no practical problems.

Defendants promptly moved to transfer this early-stage case to the most convenient forum—the District of New Jersey.  *See, e.g.*, *Promote*, 2011 WL 665817, at *4 (in case against NJ companies, the absence of practical problems warranted transfer to DNJ); *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 2015 WL 123852, at *6 (E.D. Tex. Jan. 7, 2015) (same result, with respect to Ford and the Eastern District of Michigan).  There are no cases pending before this Court (or any other court) involving the same plaintiff or patents.  *See* Ex. 27; *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 125 (E.D. Tex. 2009) (finding factor neutral where there were no "currently pending cases involving the same parties or patents" and no risk of conflicting

---

[13] These witnesses are presumed to be unwilling and therefore Defendants do not address them under the convenience factor (Section III(B)(1)).  *See Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*, 2022 WL 965394, at *3 (E.D. Tex. Mar. 30, 2022) (non-parties are presumed unwilling and not counted under the convenience factor).  Should the Court consider them willing (such that the subpoena factor is neutral), they must instead be weighed under the convenience factor (but not both).  *See id.*  The net effect is the same: each third party in NJ, counted once, favors transfer.

13

decisions).  Thus, the absence of practical problems supports transfer because it would facilitate convenience; at a minimum, this factor is neutral.  *See Promote*, 2011 WL 665817, at *4-5 (transferred where factor was neutral); *Ford*, 2015 WL 123852, at *6-7 (same).

### C. The public-interest factors strongly favor transfer because the District of New Jersey has the strongest local interest in this case.

The public-interest factors are: (1) the local interest in the dispute; (2) the administrative difficulties flowing from court congestion; (3) the familiarity of the forum with the governing law; and (4) issues of conflicts of laws or of applying foreign law. *Volkswagen I*, 371 F.3d at 203; *Volkswagen II*, 545 F.3d at 315.  The denizens of the DNJ's Newark Vicinage have a strong local interest because their community is home to SEA's headquarters and employees who are responsible for marketing over 98% of the Accused Products.  The other public factors are neutral.

### 1. The local interest strongly favors New Jersey—the community that is home to SEA's headquarters and its most relevant decision-makers.

The DNJ Newark Vicinage has the strongest local interest in this case because that is the community in which the most relevant SEA employees live and work.  Schinasi ¶¶ 2-5; Delserro ¶¶ 2-4. *See Promote*, 2011 WL 665817, at *4 (Factor is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.") (quoting *Volkswagen I*).  NJ is home to SEA's Ridgefield Park headquarters, which is where SEA's most relevant decision-makers concerning the marketing of the accused consumer TV and monitor products work, and which represents the Samsung consumer brand in the U.S. Schinasi ¶ 3; *see Promote*, 2011 WL 665817, at *5 (NJ had "a particularized interest in the resolution of th[e] case" because it was home to defendants' HQ and relevant decision-makers.).

Although the products accused of infringement can generally be purchased nationwide, that does not give rise to a distinctly local interest in any one District.  *See W. Coast Trends, Inc. v. Ogio Int'l, Inc.*, 2011 WL 5117850, at *5 (E.D. Tex. Oct. 27, 2011) ("[I]t is well settled that the

14

sale of accused products nationwide does not implicate the interests of the Eastern District of Texas any more than the local interests of any other district."). "Interests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of [accused] infringing products, are disregarded in favor of particularized local interests." *Promote*, 2011 WL 665817, at *4 (quoting *Volkswagen II*). And although Plaintiff will surely point to SEA's Plano office in opposition, SEA's Plano-based employees have no involvement with the overwhelming majority—over 98%—of the 1,234 Accused Products. *See PersonalWeb Techs., LLC v. NEC Corp. Am.*, 2013 WL 9600333, at *13 (E.D. Tex. Mar. 21, 2013) (transferring party whose Texas offices were "not specifically relevant to the accused products").

The domestic acts giving rise to this suit—SEA's marketing and sales of the 1,234 Accused Products (overwhelmingly consumer TVs and monitors)—are predominantly directed by teams in the NJ headquarters. Schinasi ¶¶ 2-6; Delserro ¶¶ 2-4. It is therefore DNJ—and particularly, the Newark Vicinage—with the strongest local interest in this dispute, thus heavily favoring transfer.

### 2. The other public-interest factors are neutral.

The remaining public-interest factors are neutral. *See Promote*, 2011 WL 665817, at *4-5 (transferring to DNJ where the law-application factors were neutral and court congestion, the "most speculative" one, could not eclipse "several relevant factors weigh[ing] in favor of transfer" (quoting *Genentech*, 566 F.3d at 1347)).[14] The sum of the four public factors thus favors transfer.

## IV. CONCLUSION

For the reasons set forth above, the DNJ's Newark Vicinage is clearly the most convenient forum, and therefore transfer is warranted.

---

[14] In both Districts, the administration of most matters in the early stages of a patent case—contentions, disclosures, and claim construction—are governed by local rules, suggesting that court congestion would have little if any impact on case progression. *Compare* Local P.R. 1.1–4.6 *with* Ex. 29 at 28-39 (D.N.J. Civ. R. 9.3, containing D.N.J. Patent Rules 1.1–4.6).

Dated: December 20, 2024

By:   */s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Attorney for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Display Co., Ltd.*

Ryan Yagura (State Bar No. 24075933)
Grace McFee (*pro hac vice*)
Kelvin Han (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
ryagura@omm.com
gmcfee@omm.com
kelvinhan@omm.com

Marc Pensabene (*pro hac vice*)
Laura B. Gore (*pro hac vice*)
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Ste. 1700
New York, NY 10019
Telephone: (212) 326-2000
mpensabene@omm.com
lgore@omm.com

*Attorneys for Defendant Samsung Display Co., Ltd.*

John M. Desmarais (*pro hac vice*)
Paul A. Bondor (*pro hac vice*)
Yung-Hoon Ha (*pro hac vice*)
Cosmin Maier (*pro hac vice*)
Taeg Sang Cho (*pro hac vice*)
Jennifer M. Przybylski (*pro hac vice*)
Lee J. Matalon (State Bar No. 24117858)
Asim Zaidi (*pro hac vice*)
Alexander Walker (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-351-3400
Fax: 212-351-3401
jdesmarais@desmaraisllp.com
pbondor@desmaraisllp.com
yha@desmaraisllp.com
cmaier@desmaraisllp.com
tcho@desmaraisllp.com
jprzybylski@desmaraisllp.com
lmatalon@desmaraisllp.com
azaidi@desmaraisllp.com
lwalker@desmaraisllp.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify pursuant to Local Civ. R. 7(h) that on December 19, 2024, counsel of record for the parties met and conferred in good faith, Plaintiff stated it would oppose this motion, and the result of the conference was that parties are at an impasse.

Dated: December 20, 2024    By:    */s/ Melissa R. Smith*
                                          Melissa R. Smith

\*  \*  \*

## **CERTIFICATE OF SERVICE**

I hereby certify pursuant to Fed. R. Civ. P. 5(d) and Local. Civ. R. 5(c) that on December 20, 2024, copies of the foregoing document and all associated papers (including sealed attachments/exhibits) were served upon all counsel of record via email.

Dated: December 20, 2024    By:    */s/ Melissa R. Smith*
                                          Melissa R. Smith